1

2                    UNITED STATES DISTRICT COURT

3                   CENTRAL DISTRICT OF CALIFORNIA
                          WESTERN DIVISION
4

5
     AARDWOLF LLC,                    )
6                                     )
                                      )
7            PLAINTIFF,               )
                                      )
8            VS.                      )   CV 14-09556-GW(JEMX)
                                      )
9                                     )
     AARDWOLF INDUSTRIES SOLE         )
10   MEMBER LLC, ET AL.,              )   LOS ANGELES, CALIFORNIA
                                      )   NOVEMBER 9, 2015
11                                    )
             DEFENDANTS.              )   (10:13 A.M. TO 10:29 A.M.)
12                                    )   (10:53 A.M. TO 10:10 A.M.)
     _____ )   (1:12 P.M. TO 1:24 P.M.)
13

14

                          SETTLEMENT CONFERENCE
15
              BEFORE THE HONORABLE JOHN E. MC DERMOTT
16                  UNITED STATES MAGISTRATE JUDGE

17

18
     APPEARANCES:              SEE NEXT PAGE
19
     COURT REPORTER:           RECORDED; COURT SMART
20
     COURTROOM DEPUTY:         SHARON ANTHONY
21
     TRANSCRIBER:              DOROTHY BABYKIN
22                             COURTHOUSE SERVICES
                               1218 VALEBROOK PLACE
23                             GLENDORA, CALIFORNIA  91740
                               (626) 963-0566
24

25   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
     TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

2

```
 1   APPEARANCES:  (CONTINUED)
     FOR THE PLAINTIFF AARDWOLF LLC:
 2
          PFEIFFER FITZGIBBON & ZIONTZ LLP
 3        BY:  JON A. PFEIFFER
               ATTORNEY AT LAW
 4        233 WILSHIRE BOULEVARD
          SUITE 220
 5        SANTA MONICA, CALIFORNIA  90401

 6        LAUSON & TARVER LLP
          BY:  ROBERT J. LAUSON
 7             ATTORNEY AT LAW
          880 APOLLO STREET
 8        SUITE 301
          EL SEGUNDO, CALIFORNIA  90245
 9
10   FOR THE DEFENDANT AARDWOLF INDUSTRIES SOLE MEMBER LLC:

11        LEXERO LAW FIRM
          BY:  ERIC J. MENHART
12             ATTORNEY AT LAW
          316 F. STREET NE
13        SUITE 101
          WASHINGTON, DC  20002
14
     ALSO PRESENT:                    JAMES E. CORBETT
15                                    MANAGING DIRECTOR
                                      AARDWOLF VIETNAM
16
                                      ABDUL HASIB
17                                    VICE PRESIDENT
                                      ABACO MACHINE USA
18
                                      HARRY NGUYEN
19                                    PRESIDENT
                                      ABACO MACHINE USA
20
                                      NGA TRAN
21                                    ADMINISTRATOR
                                      ABACO MACHINE USA
22

23

24

25
```

3

1

                              I N D E X

2   CASE NO. CV 14-09556-GW(JEMX)              NOVEMBER 9, 2015

3   PROCEEDINGS:   SETTLEMENT CONFERENCE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1  LOS ANGELES, CALIFORNIA; MONDAY, NOVEMBER 9, 2015; 10:13 A.M.

2          THE CLERK:  ALL RISE.

3          THIS UNITED STATES DISTRICT COURT IS NOW IN

4  SESSION.  THE HONORABLE JOHN E. MC DERMOTT, UNITED STATES

5  MAGISTRATE JUDGE, PRESIDING.

6          CALLING CASE NUMBER CV 14-9556, AARDWOLF LLC V.

7  AARDWOLF INDUSTRIES SOLE MEMBERSHIP LLC.

8          COUNSEL, PLEASE STATE YOUR APPEARANCES AT THE

9  LECTERN.

10          MR. PFEIFFER:  GOOD MORNING, YOUR HONOR.

11          JON PFEIFFER FOR THE PLAINTIFF.

12          MR. LAUSON:  GOOD MORNING, YOUR HONOR.

13          ROBERT LAUSON FOR THE PLAINTIFF.

14          AND WITH US TODAY WE HAVE ABDUL HASIB, HARRY NGUYEN

15  AND NGA TRAN.

16          THE COURT:  OKAY.

17          MR. MENHART:  GOOD MORNING, YOUR HONOR.

18          ERIC MENHART ON BEHALF OF DEFENDANTS.

19          AND TODAY I'M JOINED BY JIM CORBETT WHO'S THE

20  MANAGING DIRECTOR OF AARDWOLF VIETNAM.

21          THE CLERK:  OKAY.

22          THE CLERK:  YOU MAY BE SEATED.

23          THE COURT:  ALL RIGHT.  WE'RE HERE FOR A SETTLEMENT

24  CONFERENCE.

25          I'M GOING TO -- IS YOUR CLIENT'S LAST NAME WINN?

1            MR. LAUSON:  NGUYEN.

2            THE COURT:  NGUYEN.  OKAY.  BECAUSE OF THE --

3            MR. LAUSON:  NU-YEN.  I'M SORRY.  NU-YEN.

4            THE COURT:  I'M SORRY.

5            MR. LAUSON:  NU-YEN.

6            THE COURT:  NU-YEN.  OKAY.

7            I'M GOING TO REFER TO THE PLAINTIFF AS NGUYEN AND

8    THE DEFENDANTS AS THE CORBETTS SO THAT I DON'T END UP WITH --

9    MAKE MISTAKES IN GETTING THE NAMES RIGHT.

10           THE LAWYERS ARE LOCAL, BUT FOR THE BENEFIT OF THE

11   PRINCIPALS WHO HAVE COME A LONG WAY I WANT TO EXPLAIN THAT IN

12   THIS DISTRICT WE REQUIRE THAT THERE BE A SETTLEMENT

13   CONFERENCE.  AND WE EXPECT THE PARTIES WHEN THEY COME TO A

14   SETTLEMENT CONFERENCE TO HAVE OPEN MINDS AND BE REASONABLE

15   AND MAKE A GOOD FAITH EFFORT TO TRY AND REACH A SETTLEMENT

16   THAT WILL AVOID THE GREATER COST AND POTENTIALLY CATASTROPHIC

17   CONSEQUENCES OF ACTUALLY CARRYING THIS THING THROUGH TO

18   TRIAL.  AND WE'LL SEE WHAT WE CAN DO TODAY TO MAKE SOME

19   PROGRESS IN THAT REGARD.

20           THE WAY WE DO THINGS HERE IS WE BEGIN BY ALLOWING

21   THE LAWYERS FOR BOTH SIDES TO TAKE FIVE MINUTES -- I DON'T

22   WANT YOU TO GO ANY -- TAKE ANY MORE THAN THAT.  AND I'LL STOP

23   YOU IF YOU DO.

24           AND THE POINT OF YOUR SUMMARY OR YOUR EXPLANATION

25   IS REALLY NOT FOR MY BENEFIT.  I'VE READ THE PAPERS, READ THE

1   FILE.  I KNOW WHAT THE CASE IS ABOUT.  IT'S REALLY MORE

2   IMPORTANTLY TO MAKE SURE THAT THE PRINCIPALS ON EACH SIDE

3   HEAR WHAT THE LAWYERS ON THE OTHER SIDE HAD TO SAY WITHOUT IT

4   BEING FILTERED BY YOUR OWN LAWYERS.

5           OFTENTIMES PEOPLE COME INTO COURT FOR A SETTLEMENT

6   CONFERENCE, AND THEY'VE NEVER HEARD WHAT THE OTHER SIDE'S

7   LAWYER HAS HAD TO SAY.  AND I THINK THAT'S IMPORTANT IN ORDER

8   TO HAVE A REALISTIC SENSE OF WHAT'S LIKELY TO HAPPEN IF YOU

9   DON'T SETTLE THIS CASE.

10          SO, THAT SAID, LET'S BEGIN WITH THE PLAINTIFF FOR

11  -- NGUYEN.

12          MR. PFEIFFER:  THANK YOU, YOUR HONOR.

13          I HAVE READ YOUR ORDER, AND IT DOES CALL FOR A MINI

14  OPENING STATEMENT.  AND I TAKE THOSE TWO WORDS TO BE TWO

15  THINGS; ONE, MINI --

16          THE COURT:  FIVE MINUTES.

17          MR. PFEIFFER:  -- FIVE MINUTES; AND OPENING

18  STATEMENT, WHICH MEANS NOT ARGUMENT JUST AN EXPLANATION OF

19  WHERE WE ARE.

20          AND NORMALLY AN OPENING STATEMENT I WOULDN'T

21  ADDRESS -- YOU TO ADDRESS TO THE JURY, BUT REALLY WE'RE

22  ADDRESSING IT TO COUNSEL AND THE PARTIES.  SO, I APOLOGIZE,

23  BUT I'M GOING TO BE TURNING TO -- FOR PART OF THIS.

24          SO, I THANK YOU FOR COMING.  I KNOW FROM PAPERWORK

25  THAT YOUR COUNSEL FILED WITH THE COURT --

1            THE COURT:  YOU'RE GOING TO NEED TO SPEAK INTO THE

2    MIC.

3            MR. PFEIFFER:  YOU WEREN'T EXCITED ABOUT BEING

4    HERE.  SO, I THANK YOU FOR COMING.

5            NOW --

6            THE COURT:  WELL, HE NEEDED TO COME AND HAVE HIS

7    DEPOSITION TAKEN.

8            MR. PFEIFFER:  NOW, OUR STORY STARTS FROM OUR

9    PERSPECTIVE IN AUSTRALIA IN 2003.  HARRY OWNED A COMPANY,

10   WHICH YOU KNOW.  ABACO, WHICH HAD A DIVISION IN AUSTRALIA,

11   THERE WERE -- YOU ALSO KNOW THIS, BUT I GOT TO SEE IT -- WENT

12   ON THE WEBSITE.  AND IT MAKES ALL SORTS OF COOL STUFF.  JUST

13   AS YOUR COMPANY MAKES ALL SORTS OF COOL STUFF WITH MATERIAL

14   HANDLING AND STUFF THAT YOU -- YOU -- I OR THE -- WOULDN'T

15   NEED, BUT COOL STUFF.

16            AND AT THE SAME TIME YOU HAD TWO COMPANIES.  IT WAS

17   HERDGRAPH AND AARDWOLF.  AND IT WAS HERDGRAPH THAT HELD A

18   TRADEMARK IN THE MARK AARDWOLF BACK IN 2003.  AND THAT IS --

19   AS YOU KNOW, THAT'S THE MARK WE'RE IN COURT HERE TODAY

20   ABOUT.

21            AND THEN GO FAST FORWARD TO 2006 WHEN THERE WAS A

22   PATENT SUIT FILED BY THOSE TWO COMPANIES AGAINST ABACO, A

23   DIVISION OF ABACO IN AUSTRALIA.  FOR WHATEVER REASON THAT

24   LAWSUIT WAS DISMISSED OR ABANDONED.  AND THERE WERE COSTS OF

25   $80,000 ASSOCIATED WITH THAT LAWSUIT AWARDED TO ABACO'S

1   DIVISION.

2           AND AFTER -- AFTER SOME LEGAL WRANGLING, AFTER THEY

3   DID NOT -- THE COMPANIES DID NOT PAY THE $80,000 THERE WAS A

4   LIQUIDATION FILED IN AUSTRALIA.  AND THAT WAS IN 2011.

5           NOW, IN 2011 THAT'S WHERE AT THE SAME TIME YOU

6   FILED AARDWOLF AUSTRALIA.  AND THESE ARE ALL THINGS YOU KNOW,

7   BUT IT'S PART OF OUR STORY OR PART OF OUR CASE.  AND ONE OF

8   THE ASSETS IN THE LIQUIDATION WAS THE MARK, THE AARDWOLF

9   MARK.

10          NOW, HARRY PURCHASED THE AARDWOLF MARK FROM THE

11  LIQUIDATORS.  BUT HERE'S THE RUB IS THAT YOU AND YOUR COMPANY

12  SAY THAT HARRY DOESN'T OWN THE MARK.  AND THAT'S OBVIOUSLY

13  WHY WE'RE HERE.

14          AND WE BELIEVE THAT YOU WILL ARGUE TWO CONTENTIONS.

15  ONE IS THAT BASICALLY THAT THE MARK WAS ABANDONED.  IT WAS

16  ABANDONED BEFORE THE LIQUIDATION.  AND THEN -- SO, WE HAD NO

17  RIGHT TO GET IT FROM THE LIQUIDATOR.

18          AND WE'LL RESPOND WITH TWO THINGS.  ONE, THAT IN

19  NOVEMBER OF 19- -- OF 2013 YOU TRIED TO TRANSFER THAT MARK TO

20  AARDWOLF AUSTRALIA.  AND, THEN, TWO, THAT THE LIQUIDATORS

21  TRANSFERRED THE MARK TO HARRY AND ALL RIGHTS TO THAT MARK.

22          NOW, HERE'S HOW WE LOOK AT IT AND HERE'S THE

23  TAKE-AWAY FROM THIS FROM OUR PERSPECTIVE IS THAT GIVEN THOSE

24  TWO FACTS WE THINK A JURY WILL FIND THAT IT IS MORE LIKELY

25  THAN NOT THAT YOU'RE A SMART MAN.  AND THAT YOU WOULDN'T HAVE

1   MADE THAT TRANSFER HAD YOU THOUGHT THE MARK HAD BEEN

2   ABANDONED.

3           AND WE ALSO THINK IT'S MORE LIKELY THAN NOT THAT A

4   JURY WILL SAY THE LIQUIDATORS WOULD HAVE NEVER TRANSFERRED

5   THE MARK HAD THEY THOUGHT IT HAD BEEN ABANDONED OR THERE WAS

6   NO RIGHT TO IT.

7           AND THAT'S ESSENTIALLY OUR STORY.

8           THE COURT:  I HAVE TWO QUESTIONS FOR YOU.

9           MR. PFEIFFER:  YES.

10          THE COURT:  AM I CORRECT THAT AT THIS POINT IN TIME

11  MR. NGUYEN -- AND I IN REFERRING TO HIM AS MR. NGUYEN -- ALL

12  THE COMPANIES.

13          MR. PFEIFFER:  CORRECT.

14          THE COURT:  -- IS NOT NOW SELLING PRODUCTS IN THE

15  U.S. UNDER THE AARDWOLF TRADEMARK?

16          MR. PFEIFFER:  THAT IS CORRECT.

17          THE COURT:  OKAY.

18          THE REGISTRATION FOR THE MARK EXPIRED IN 2012?

19          MR. PFEIFFER:  I BELIEVE -- IN ALL HONESTY, YOUR

20  HONOR, I'M NOT CERTAIN OF THE DATE.

21          MR. LAUSON:  THAT'S CORRECT.

22          MR. PFEIFFER:  IT'S CORRECT.

23          THE COURT:  AND IS THERE ANY U.S. PTO GRANTING OF

24  ANY SUBSEQUENT RIGHTS?

25          MR. PFEIFFER:  THERE WAS, AND THEN THEY'VE BEEN

10

1    TAKEN AWAY, AND NOW WE'RE IN LIMBO PENDING THIS CASE.

2              THE COURT:  BUT THERE'S NO CURRENT U.S. PTO --

3              MR. PFEIFFER:  THAT'S MY UNDERSTANDING.

4              THE COURT: -- ACKNOWLEDGMENT OF ANY REGISTRATION OR

5    ANY RIGHTS IN THE U.S. UNDER THE MARK?

6              MR. LAUSON:  ACTUALLY BOTH PARTIES HAVE

7    APPLICATIONS PENDING IN ITS --

8              THE COURT:  JUST ANSWER MY QUESTION.  THERE'S NO

9    U.S. PTO FORMAL ADMINISTRATIVE APPROVAL OF ANY MARK AT THIS

10   TIME?

11             MR. LAUSON:  YES.

12             THE COURT:  OKAY.

13             (BRIEF PAUSE.)

14             THE COURT:  OKAY.

15             MR. PFEIFFER:  THANK YOU.

16             THE COURT:  MR. MENHART.

17             MR. MENHART:  YOUR HONOR AND FELLOW PLAINTIFFS, THE

18   MATTER IN THIS CASE IS IN OUR -- FROM OUR PERSPECTIVE A

19   LITTLE BIT LATER THAN WHAT THE PLAINTIFFS JUST EXPLAINED.

20             AS OF THIS MOMENT LET'S ASSUME THAT THE TRANSFER AS

21   IT WAS DONE IN AUSTRALIA IS COMPLETELY LEGITIMATE, ACCURATE,

22   CORRECT.  LET'S ASSUME THAT.

23             THE PROBLEM IS THAT THE MARKS THAT WERE TRANSFERRED

24   IN AUSTRALIA WEREN'T UNITED STATES TRADEMARKS.  AND IT'S AS

25   SIMPLE AS READING THE DOCUMENT BECAUSE THE DOCUMENT SAYS

```
 1    WE'RE TRANSFERRING MARKS IN AUSTRALIA.  THEY HAVE

 2    REGISTRATION NUMBERS.  AND THEY HAVE THE SPECIFIC

 3    REGISTRATIONS THAT ARE BEING TRANSFERRED.  THERE WERE FOUR IN

 4    AUSTRALIA.  THERE WAS ONE IN THE EUROPEAN UNION.

 5            AND THE HARSH REALITY IS THAT YOU CAN'T TAKE

 6    SOMETHING THAT YOU DON'T OWN.  YOU KNOW, WHEN I GO AND I --

 7            THE COURT:  YOU'RE SAYING THAT THE TRADEMARK

 8    TRANSFER -- DEED OF TRANSFER DOESN'T MENTION THE U.S. --

 9            MR. MENHART:  THAT'S CORRECT.

10            THE COURT:  -- REGISTRATION?

11            MR. MENHART:  THAT'S CORRECT, YOUR HONOR.

12            THE COURT:  THE ONE THAT EXPIRED IN 2012?

13            MR. MENHART:  IT DOES NOT MENTION IT -- IT DOES NOT

14    MENTION IT BY REGISTRATION MARK, NO.

15            THE COURT:  OKAY.

16            MR. MENHART:  THE PROBLEM IS THAT IF I GO AND BUY A

17    HOUSE DOWN THE STREET, AND THE TITLE SAYS I OWN HOUSE X, I

18    CAN'T WALK NEXT DOOR AND ALSO WALK INTO HOUSE Y AND SAY I OWN

19    IT.  I OWN HOUSE X.  THAT'S WHAT I PAID FOR.  THAT'S WHAT I

20    RECEIVED.

21            AND THE PROBLEM FOR US IS THAT YOU'RE TRYING TO

22    TAKE SOMETHING THAT ISN'T YOURS -- MAYBE IT'S YOURS IN

23    AUSTRALIA.  I DON'T KNOW.  BUT WE'RE NOT IN AUSTRALIA RIGHT

24    NOW.  WE'RE IN THE UNITED STATES.  AND WE HAVE TO TALK ABOUT

25    UNITED STATES COMMERCIAL ISSUES.
```

1          AND IN THIS PARTICULAR CASE, FOR BETTER OR FOR

2     WORSE, EVEN IF EVERYTHING WENT YOUR WAY, AND YOU HAD THE

3     TRADEMARK AND YOU HAD THE UNITED STATES TRADEMARK FROM THAT

4     ASSIGNMENT IN 2013, MY CLIENT PREDATES YOUR USE HERE IN THE

5     UNITED STATES.

6          BECAUSE AARDWOLF VIETNAM HAS A DEMONSTRATED USE

7     FROM 2007 ALL THE WAY TO THE PRESENT DAY, CONSISTENT

8     DEMONSTRATED USE.  AND YOU DON'T HAVE TO TRUST US.  WE HAVE

9     DEMONSTRATED RECORDS FROM A THIRD PARTY THAT TRACKS PORT

10    SHIPMENTS THAT COME INTO THE UNITED STATES.  AND THIRD PARTY

11    SAYS, HEY, AARDWOLF VIETNAM YOU SHIPPED GOODS THAT SAY

12    "AARDWOLF" ON IT, AND YOU'VE BEEN DOING THAT SINCE 2007.

13         THE PLAINTIFFS IN THIS CASE HAVE NO USE OF THE

14    MARK.  SO, EVEN IF THEY DID HAVE THE USE OF THE MARK, WHICH

15    THEY DON'T BASED ON A PURE READING OF THE ASSIGNMENT, THEY

16    WOULD NOT HAVE THE RIGHTS EVEN NOW.  BECAUSE COMMON LAW

17    RIGHTS PREDATE ANY RIGHTS THAT YOU WOULD HAVE IN THE UNITED

18    STATES.  AND THAT'S NOT ERIC MENHART SAYING THAT.  THAT'S THE

19    LAW.

20         SO, WE APPRECIATE THAT YOU MAY OWN MARKS IN THE

21    UNITED -- EXCUSE ME, IN AUSTRALIA, BUT THE HARSH REALITY IS

22    THAT UNFORTUNATELY YOU DON'T OWN THEM HERE.  YOU DON'T OWN

23    THEM BECAUSE YOU DIDN'T GET THEM IN AN ASSIGNMENT, AND YOU

24    DON'T OWN THEM BECAUSE YOU DON'T HAVE COMMON LAW RIGHTS LIKE

25    MY CLIENTS DO HERE IN THE UNITED STATES.

1          SO, WHILE WE APPRECIATE WHERE YOU'RE COMING FROM.

2   WE UNDERSTAND YOU'D LIKE THE MARK IN THE UNITED STATES.  BUT

3   THE LAW DOES NOT SAY THAT THAT'S THE WAY THAT IT WORKS.  AND

4   AT THE END OF THE DAY THAT'S OUR POSITION.

5          THE COURT:  SO, YOU'RE SAYING THAT SINCE 2007 THE

6   CORBETTS HAVE BEEN SELLING PRODUCTS INTO THE UNITED STATES

7   UNDER THE AARDWOLF MARK?

8          MR. MENHART:  YES, YOUR HONOR.  AND WE HAVE QUITE A

9   BIT OF DOCUMENTATION OF THAT.

10          THE COURT:  PUTTING ASIDE THE DISTINCTIONS BETWEEN

11   MARKS REGISTERED IN AUSTRALIA, VIETNAM, U.S., ALL THAT, IS IT

12   YOUR CONTENTION THAT BECAUSE THERE'S NO -- THAT IF THERE'S NO

13   TRADEMARK REGISTRATION, THERE'S NO COMMON LAW RIGHT EITHER?

14          MR. MENHART:  THAT IS NOT OUR CONTENTION.

15          THE COURT:  OKAY.

16          MR. MENHART:  OUR CONTENTION BEING PARTICULARLY --

17   OUR CONTENTION APPLIED TO THIS CASE IS THAT HERDGRAPH EVEN IF

18   THEY MAY HAVE HAD COMMON LAW RIGHTS, THOSE RIGHTS WERE

19   EXTINGUISHED BECAUSE HERDGRAPH STOPPED SELLING THE MARK WELL

20   BEFORE THE REGISTRATION EXPIRED WITH THE U.S. PATENT AND

21   TRADEMARK OFFICE.  SO, I BELIEVE THE REGISTRATION EXPIRED IN

22   --

23          THE COURT:  WELL, BUT EVEN THOUGH IT EXPIRES THAT

24   DOESN'T AFFECT THE COMMON LAW RIGHTS, DOES IT?

25          MR. MENHART:  THAT'S EXACTLY RIGHT.  BUT THE COMMON

1   LAW RIGHTS ARE AFFECTED IF THERE IS ABANDONMENT OF THE USE OF

2   THE MARK OVER A --

3           THE COURT:  SO, ULTIMATELY THE CASE COMES DOWN TO

4   THAT ISSUE ANYWAY?

5           MR. MENHART:  IN OUR --

6           THE COURT:  I MEAN, I'M LOOKING AT --

7           MR. MENHART:  IN OUR OPINION IT DOES.

8           THE COURT:  I'M LOOKING AT TRADEMARKS IN AUSTRALIA,

9   VIETNAM, REGISTERED TO HERDGRAPH, RIGHT? -- THAT WOULD ALSO

10  CARRY WITH THEM COMMON LAW RIGHTS.

11          MR. MENHART:  THAT -- THAT IS A POINT OF

12  CONTENTION.

13          THE COURT:  AND TO GO TO ANOTHER COUNTRY AND USE A

14  PRODUCT WITH THAT TRADEMARK DOESN'T -- BECAUSE THERE'S NO

15  REGISTRATION DOESN'T NECESSARILY MEAN THERE AREN'T COMMON LAW

16  RIGHTS THAT COULD BE PROTECTED, RIGHT?

17          MR. MENHART:  THAT'S CORRECT.

18          THE COURT:  OKAY.

19          MR. MENHART:  IF THE NGUYENS HAD BEEN SELLING THIS

20  MARK IN THE UNITED STATES BEFORE --

21          THE COURT:  WELL, THAT WASN'T REALLY WHERE MY

22  QUESTION WENT.

23          MR. MENHART:  FAIR ENOUGH.  WELL --

24          THE COURT:  WHAT I WAS SAYING EVEN IF THEY WEREN'T

25  SELLING, THEY MAY HAVE COMMON LAW RIGHTS.

1        MR. MENHART:  WELL, AND I JUST -- THAT'S WHY I

2   THINK IT'S AN IMPORTANT POINT OF CLARIFICATION.  IF THEY'RE

3   NOT SELLING IN THE UNITED STATES, THEY DO NOT HAVE COMMON LAW

4   RIGHTS.  THEY CANNOT.  I MEAN, THAT'S THE POINT OF THE LAW.

5   YOU HAVE TO BE A GOOD-FAITH USER OF THE MARK IN COMMERCE.

6        THE COURT:  ALL RIGHT.

7        MR. MENHART:  THANK YOU.

8        THE COURT:  ALL RIGHT.  NOW WE'VE COME TO THE STAGE

9   WHERE WE DO SEPARATE CAUCUSES IN CHAMBERS.

10        AND I WILL START WITH THE PLAINTIFFS.

11        (DISCUSSION IN CHAMBERS 10:29 A.M. TO 10:53 A.M.)

12        THE CLERK:  PLEASE REMAIN SEATED AND COME TO ORDER.

13        THE COURT IS ONCE AGAIN IN SESSION.  THE HONORABLE

14   JOHN E. MC DERMOTT, UNITED STATES MAGISTRATE JUDGE,

15   PRESIDING.

16        RECALLING CASE NUMBER CV 14-9556, AARDWOLF LLC

17   VERSUS AARDWOLF INDUSTRIES SOLE MEMBER LLC.

18        COUNSEL, PLEASE RESTATE YOUR APPEARANCES.

19        MR. PFEIFFER:  GOOD MORNING.

20        JON PFEIFFER FOR THE PLAINTIFFS -- PLAINTIFF.

21        MR. LAUSON:  GOOD MORNING.

22        ROBERT LAUSON FOR THE PLAINTIFF.

23        MR. MENHART:  ERIC MENHART ON BEHALF OF DEFENDANTS.

24   THANK YOU.

25        THE COURT:  ALL RIGHT.

1            AS I'VE ADVISED BOTH SIDES, IT'S MY BELIEF THAT THE

2    SETTLEMENT OFFERS MADE IN BOTH DIRECTIONS ARE EXTREME AND

3    UNREASONABLE AND DON'T REFLECT THE KIND OF EFFORT TO REACH --

4    YOU HAVEN'T PUSHED IT INTO A REGION WHERE IT BECOMES -- IT

5    CREATES THE OPPORTUNITY TO ACCOMPLISH A SETTLEMENT.

6            AS I'VE SAID TO BOTH SIDES, YOU'RE LOOKING AT LOTS

7    OF EXPENSE, LOTS OF TIME IN COURT WITH NO CLEAR OUTCOME AND

8    NO CLEAR WINNER.  I DON'T THINK THERE'S A CLEAR WINNER HERE.

9            IT SEEMS TO ME THAT IT WOULD MAKE FAR MORE SENSE TO

10   LET THE BUSINESSMEN SETTLE THIS CASE RATHER THAN THE COURTS

11   AND THE JURIES.

12           I HAVE SUGGESTED TO BOTH SIDES AS A WAY TO GET AWAY

13   FROM THE EXTREME POSITIONS BOTH SIDES HAVE TAKEN THAT WE

14   BEGIN WITH THE PREMISE THAT WE'RE NOT GOING TO FOCUS ON WHAT

15   HAPPENED IN THE PAST.  WE'RE GOING TO LOOK AT THIS ON A

16   FOREGOING BASIS AND CONSIDER WHETHER OR NOT IT IS POSSIBLE TO

17   RESOLVE THE CASE BY A TRADEMARK LICENSING AGREEMENT THAT

18   WOULD ALLOW THE DEFENDANT TO OPERATE IN THE U.S. WITH THAT --

19   UNDER THAT ARRANGEMENT, WHICH MAKES SOME SENSE IN VIEW OF THE

20   FACT THAT THERE'S LITTLE OR NO BUSINESS BEING CONDUCTED BY

21   THE PLAINTIFF IN THE U.S. AT THE MOMENT.  WHEREAS, THE

22   DEFENDANT HAS BEEN DOING BUSINESS WITH THE AARDWOLF

23   TRADEMARKS SINCE 2007.

24           IS THAT RIGHT?

25           MR. MENHART:  YES, YOUR HONOR.

1          THE COURT:  SO, I WANT TO SEE THE PARTIES EXPLORE

2     THE POSSIBILITIES OF A TRADEMARK LICENSING AGREEMENT.

3          BECAUSE OF THE PAST THERE'S MORE THAN A LITTLE

4     DISTRUST BETWEEN THE PARTIES.

5          MR. MENHART, I'D LIKE YOU TO TAKE THE LECTERN AND

6     GIVE SOME THOUGHT -- STATE YOUR VIEWS ABOUT WHAT WOULD BE

7     NECESSARY FOR YOU, FOR THE PLAINTIFF, IN ORDER TO GO DOWN THE

8     ROAD OF A TRADEMARK LICENSING AGREEMENT WHERE YOU WOULD HAVE

9     TO ACKNOWLEDGE THE RIGHTS OF THE PLAINTIFF.

10          BUT YOU NEED SECURITY, REASSURANCE, PROTECTION FOR

11     WHAT WOULD HAPPEN IN THE UNITED STATES.  I'M NOT WORRIED

12     ABOUT WHAT WOULD HAPPEN IN VIETNAM OR AUSTRALIA.  THIS CASE

13     IS ABOUT USING THE MARK IN THE UNITED STATES.

14          SO, WHY DON'T YOU GIVE YOUR THOUGHTS ON WHAT IT

15     WOULD TAKE.

16          MR. MENHART:  SURE.

17          YOUR HONOR AND OPPOSING COUNSEL AND CLIENTS, WE

18     WANT TO MAKE SOMETHING PERFECTLY CLEAR.  WE DON'T BELIEVE

19     THAT A LICENSE AGREEMENT IS SOMETHING THAT WOULD WORK FOR US,

20     FIRST AND FOREMOST.

21          THAT BEING SAID, IF WE WERE TO COME TO SOME TYPE OF

22     LICENSE AGREEMENT, WHICH WOULD BE A PURE -- AND I'LL SAY THIS

23     IN OPEN COURT TO YOU -- WHICH WOULD BE A PURE NUISANCE

24     SETTLEMENT.  SIMPLE AS THAT.  WE DON'T THINK YOU HAVE THE

25     RIGHTS.  WE'VE BEEN CLEAR ABOUT THAT.

1         BUT LET'S ASSUME FOR A SECOND THAT WE WOULD COME TO

2    A LICENSE AGREEMENT.  THE LICENSE AGREEMENT WOULD HAVE TO

3    LOOK LIKE AN AGREEMENT -- AND I'LL TELL YOU NOW THE MONEY

4    WOULDN'T BE BIG.  BUT THE LICENSE WOULD BE UNDER UNITED

5    STATES LAWS, SUBJECT TO JURISDICTION OF THE CENTRAL DISTRICT

6    OF CALIFORNIA, AND WOULD HAVE TO BE SUBJECT TO EXTREME

7    CONTRACTUAL TERMS THAT WOULD ALLOW ANY AGGRIEVED PARTY TO

8    ENFORCE THE AGREEMENT IN THE UNITED STATES AND BE ABLE TO

9    COLLECT UPON ANY OF THOSE JUDGMENTS.

10        BY WAY OF EXAMPLE.  IF WE ENTER INTO AN AGREEMENT

11   WITH YOUR SIDE -- AND YOU GUYS ARE AWARE OF THE CONTENTIOUS

12   HISTORY.  IF WE ENTER INTO AN AGREEMENT WITH YOUR SIDE, WE

13   WOULD HAVE TO HAVE A SITUATION WHERE WE HAVE LIQUIDATED

14   DAMAGES, INJUNCTIVE RELIEF.  AND IT WOULD HAVE TO BE IN A

15   JURISDICTION WHERE WE COULD COLLECT ON ANY JUDGMENT.  AND,

16   THEN, OF COURSE, IT WOULD ALSO NEED TO HAVE ANY ATTORNEYS'

17   FEES FOR THE PREVAILING PARTY.  BASICALLY IT WOULD HAVE TO BE

18   EXTRAORDINARILY CLEAR THAT IF YOU BREAK THIS AGREEMENT, AND

19   SOMEONE NEEDS TO ENFORCE IT, THE ENFORCER IS GOING TO GET

20   EVERYTHING BACK AND MORE.

21        SO, WE DON'T BELIEVE THAT A LICENSE MAKES SENSE.

22   WE WANT TO MAKE THAT PERFECTLY UPFRONT.  BUT TO THE EXTENT

23   THAT IT WOULD, WE ARE COMPLETELY UNWILLING, COMPLETELY

24   UNWILLING TO SETTLE WITHOUT THAT STYLE OF ENFORCEMENT IN ANY

25   TYPE OF LICENSE AGREEMENT.

19

1          SO, WE TRULY HONESTLY -- WE'VE DONE THE BEST WE

2     CAN.  BUT THAT IS THE BEST WE COULD POSSIBLY DO.

3          MR. PFEIFFER:  I'VE BEEN PRACTICING 31 YEARS, AND

4     I'M NOT REALLY SURE WHAT EXTREME CONDITIONS MEAN.

5          THAT SAID, WE WOULD AGREE.  WE WOULD WANT THE SAME

6     -- SORRY.  WE WOULD WANT THE SAME SORT OF PROVISIONS THAT IF

7     THERE IS VIOLATION, THERE'S LIQUIDATED DAMAGES, ATTORNEY'S

8     FEES, IT'S ENFORCED IN THE UNITED STATES UNDER -- IN THE

9     CENTRAL DISTRICT OF THE UNITED STATES LAW, CALIFORNIA LAW --

10    I MEAN, UNITED STATES LAW.

11         SETTING ASIDE YOUR VIEW OF ANY SETTLEMENT BEING A

12    NUISANCE AMOUNT, WE AGREE WITH THE CONCEPT.

13         THE COURT:  WELL, OTHER THAN GETTING PREPARED FOR

14    MR. CORBETT'S DEPOSITION TOMORROW, I TAKE IT PEOPLE ARE IN

15    TOWN FOR ALL OF TODAY.

16         IS THAT RIGHT?

17         MR. MENHART:  THAT'S CORRECT.

18         MR. PFEIFFER:  YES, YOUR HONOR.

19         AND AS FAR AS MR. CORBETT'S DEPOSITION TOMORROW, WE

20    HAVE NOT BEEN -- THE DOCUMENTS HAVE NOT BEEN PRODUCED TO US.

21         THE COURT:  I DON'T CARE.

22         MR. PFEIFFER:  OKAY.

23         THE COURT:  I ORDERED THAT DEPOSITION, AND IT'S

24    GOING TO TAKE PLACE.  AND YOU'RE GOING TO HAVE TO MAKE THE

25    BEST OF IT.  THAT'S MY RULING.  I THOUGHT THAT WAS CLEAR.

1            MR. MENHART:  IT WAS CLEAR TO US, YOUR HONOR.

2            THE COURT:  ALL RIGHT.  HERE'S WHAT I WANT THE

3   PARTIES TO DO.  THERE IS APPARENTLY MORE AGREEMENT THAN I

4   WOULD HAVE THOUGHT GIVEN WHAT I CONSIDER TO BE A LITTLE BIT

5   EXTREME APPROACH TO THE WAY YOU STATED THE PROPOSAL.

6            BUT WHAT I WANT YOU TO DO, MR. MENHART, IS PUT DOWN

7   IN A SERIES OF BULLET POINTS WHAT IT IS YOU WANT WITH A

8   LICENSING AGREEMENT.  OKAY.

9            HOW SOON DO YOU THINK YOU COULD DO THAT?

10           MR. MENHART:  YOUR HONOR, I WANT TO MAKE SOMETHING

11  PERFECTLY CLEAR.  WE ARE -- LET ME ANSWER YOUR QUESTION

12  FIRST.  I CAN PUT IT DOWN IN A SERIES OF BULLET POINTS IN

13  ABOUT AN HOUR.

14           WHAT I WILL TELL YOU IS THAT AT THIS MOMENT WE HAVE

15  TWO DEFENDANTS HERE.  ONE IS AVAILABLE BY PHONE AS WE

16  PROMISED THAT HE WOULD BE.  AND WHAT I WILL ALSO TELL YOU IS

17  THAT THIS IS IN OUR OPINION A WIN FOR THE PLAINTIFF.  AND,

18  SO, I THINK THAT THIS IS GOING TO BE SOMETHING THAT WOULD

19  HAVE TO BE VERY CAREFULLY DRAFTED.  BUT I WILL PUT DOWN IN

20  BULLET POINTS SORT OF WHAT WE WOULD NEED TO HAVE HAPPEN.

21           THE COURT:  I WANT YOU TO DO THAT.

22           MR. MENHART:  AND I WILL DO THAT.  BUT I WANT TO

23  MAKE IT CLEAR --

24           THE COURT:  SO, YOU TAKE --

25           MR. MENHART:  I JUST WANT TO MAKE IT CLEAR IN OPEN

1   COURT -- I'M SORRY TO INTERRUPT -- WE HAVE NOT SAID THAT WE

2   ARE AGREEING TO A LICENSE AGREEMENT.  WE ARE SAYING THAT IT

3   IS A POSSIBILITY.  AND I JUST WANT TO MAKE SURE THAT

4   DISTINCTION IS VERY CLEAR TO THE COURT, THAT TO THE EXTENT

5   THAT THAT IS SOMETHING THAT THE PARTIES CAN AGREE UPON,

6   THAT'S --

7               THE COURT:  I UNDERSTAND --

8               MR. MENHART: -- HOW WE CAN MAKE IT WORK.

9               THE COURT: -- ALL OF THAT.

10              MR. MENHART:  FAIR ENOUGH.

11              THE COURT:  BUT I WILL REPEAT WHAT I SAID AT THE

12  BEGINNING, THAT I EXPECT EVERYBODY TO HAVE AN OPEN MIND AND

13  MAKE A REAL EFFORT TOWARDS SETTLEMENT.

14              MR. MENHART:  YOUR HONOR --

15              THE COURT:  IT'S PERFECTLY OKAY TO TAKE WHATEVER

16  POSITION YOU WANT TO TAKE.  BUT DON'T DO IT IN A WAY THAT

17  KILLS ANY POSSIBILITY OF AN AGREEMENT IS ALL I'M SAYING.

18              MR. MENHART:  AND JUST --

19              THE COURT:  I WANT YOU TO GO AND TAKE THE HOUR, PUT

20  THE BULLET POINTS DOWN.

21              I ASSUME YOU CAN STAY HERE IN THE COURTHOUSE.

22  THERE'S A ROOM OUT THERE.  THERE'S DOWN ON THE SECOND FLOOR

23  THERE ARE ATTORNEY CONFERENCE ROOMS.

24              BUT TAKE AN HOUR, DRAFT YOUR BULLET POINTS, GIVE

25  THEM TO MR. PFEIFFER.

1           IT'S ELEVEN O'CLOCK.  SO, I'LL SEE EVERYBODY BACK

2     HERE AT ONE O'CLOCK.

3           MR. MENHART:  THANK YOU, YOUR HONOR.

4           THE COURT:  ALL RIGHT.

5           THE CLERK:  COURT IS ADJOURNED.

6           (RECESS 11:04 A.M. TO 1:12 P.M.)

7           THE CLERK:  ALL RISE.  THIS UNITED STATES DISTRICT

8     COURT IS ONCE AGAIN IN SESSION.

9           THE HONORABLE JOHN E. MC DERMOTT, UNITED STATES

10    MAGISTRATE JUDGE, PRESIDING.

11          CALLING CASE NUMBER CV 14-9556, AARDWOLF LLC.

12    VERSUS AARDWOLF INDUSTRIES SOLE MEMBER LLC.

13          COUNSEL, PLEASE STATE YOUR APPEARANCES.

14          MR. PFEIFFER:  GOOD AFTERNOON.

15          JON PFEIFFER AND BOB LAUSON FOR THE PLAINTIFF.

16          MR. MENHART:  GOOD AFTERNOON, YOUR HONOR.

17          ERIC MENHART ON BEHALF OF DEFENDANTS.

18          THE COURT:  OKAY.

19          WELL, I READ MR. MENHART'S BULLET POINTS.

20          I TAKE IT THE PLAINTIFF HAS SEEN THEM TOO.

21          MR. PFEIFFER:  WE HAVE SEEN THE EMAIL, YOUR HONOR.

22          THE COURT:  OKAY.

23          YOU'VE DECIDED -- THE CORBETTS HAVE DECIDED THEY

24    DON'T WANT A LICENSING AGREEMENT, CORRECT?

25          MR. MENHART:  YOUR HONOR, WE --

1        DID YOU WANT ME TO ADDRESS THAT?

2            THE COURT:  YOU EITHER DO OR YOU DON'T.

3            MR. MENHART:  LET ME VERY -- WE -- WE -- RANSOM

4    NUMBERS, WE TRIED TO MAKE IT WORK.  BEING FRANK, THE BUSINESS

5    REALITY IS GOING TO MAKE IT EXTRAORDINARILY DIFFICULT.

6            SO, WHAT WE TRIED TO DO WAS ADDRESS THIS -- THE

7    SAME THINGS THAT WE WOULD HAVE IN A LICENSE AGREEMENT EXCEPT

8    THAT IT WOULD CLARIFY RIGHTS IN ONE ENTITY.  AND, SO, THAT

9    WAS THE ROUTE THAT WE DECIDED TO GO.

10           AND WE THINK THAT GIVEN WHAT A LICENSE AGREEMENT

11   WOULD ACCOMPLISH, WHAT WE ARE -- WHAT WE'RE PROPOSING NOW

12   ALSO ACCOMPLISHES THE SAME THING EXCEPT IT MAKES IT A LITTLE

13   EASIER TO MAKE IT WORK IN A BUSINESS ENVIRONMENT.

14           THE COURT:  MR. PFEIFFER.

15           MR. PFEIFFER:  AND I APOLOGIZE IN BRINGING MY PHONE

16   BECAUSE IT'S HOW I GOT THE BULLET POINTS.

17           I GUESS WHAT -- THE CONFUSION WE HAVE IS THE

18   STATEMENT THAT IT WOULD CAUSE CONFUSION TO HAVE A LICENSE

19   AGREEMENT.  I GUESS THAT -- I DON'T --

20           THE COURT:  I THINK THE ONLY THING IS THAT YOU

21   WOULD OPERATE WITH THE TRADEMARK IN THE UNITED STATES.  THEY

22   WOULD OPERATE WITH IT ELSEWHERE.  AND PEOPLE COULD GET THAT

23   CONFUSED.

24           IS THAT THE POINT?

25           MR. MENHART:  THAT'S CORRECT.  IN ADDITION TO A

1  VARIETY OF OTHER THINGS --

2            THE COURT:  ALL RIGHT.

3            MR. MENHART: -- WHICH WE DID SET OUT.

4            THE COURT:  THAT'S HOW I TOOK IT.

5            MR. PFEIFFER:  WELL -- BUT IT'S ALREADY HAPPENING

6  WORLDWIDE NOW.

7            THE COURT:  I UNDERSTAND.

8            MR. PFEIFFER:  SO, I GUESS WITH THAT CAVEAT THE

9  PROPOSAL IN THE ALTERNATIVE FOR THE WORLDWIDE -- WORLDWIDE

10  RIGHTS FOR $20,000 IS KIND OF A NON-STARTER.

11            THE COURT:  I DIDN'T THINK YOU'D HAVE ANY INTEREST

12  IN IT.

13            MR. PFEIFFER:  YEAH.

14            THE COURT:  ALL RIGHT.

15            THERE IS AT LEAST A FRAMEWORK.  I MEAN, I THINK WE

16  CAN NOW -- WE MIGHT AS WELL NOW ACCEPT THE FACT THAT THE

17  DEFENDANTS ARE NOT GOING TO DO A LICENSING AGREEMENT.  AND IF

18  THERE IS TO BE AN AGREEMENT, IT'S PROBABLY SOMETHING ALONG

19  THE LINES IN THE ALTERNATIVE THAT THEY'VE ARRANGED.  YOU

20  EITHER HAVE INTEREST IN IT OR YOU DON'T.  IF THE AMOUNT IS IN

21  ISSUE, WHICH IS WHAT I HEAR YOU SAYING, THEN, PERHAPS, IT'S

22  WORTH THE NGUYENS CONSIDERING WHAT AN APPROPRIATE VALUE WOULD

23  BE TO GIVE UP THE WORLDWIDE RIGHTS.

24            MR. PFEIFFER:  I AGREE WITH YOU.  AND I'M NODDING

25  MY HEAD.  I -- WE HAVE NOT -- WE BEGAN THAT CONVERSATION OVER

1    LUNCH.  WE HAVE NOT CONCLUDED THAT CONVERSATION.  WHEN WE GOT

2    --

3              THE COURT:  I DIDN'T -- I'M NOT REALLY FORCING YOU

4      --

5              MR. PFEIFFER:  YEAH.

6              THE COURT: -- TO GIVE ME A RESPONSE BECAUSE IT

7    STRIKES ME THAT IF YOU GO IN THIS DIRECTION IT'S SOMETHING

8    YOU'D WANT TO GIVE FURTHER THOUGHT TO.

9              MR. CORBETT, HOW LONG ARE YOU GOING TO BE IN TOWN?

10   I KNOW YOU'VE GOT YOUR DEPOSITION TOMORROW.

11             MR. CORBETT:  TILL THURSDAY.

12             THE COURT:  WILL YOU -- YOU LEAVE WHEN THURSDAY?

13             MR. CORBETT:  NIGHT.

14             THE COURT:  THURSDAY NIGHT?

15             MR. CORBETT:  VERY LATE.  AT MIDNIGHT.

16             THE COURT:  ALL RIGHT.  WELL, THE COURT IS CLOSED

17   ON WEDNESDAY BECAUSE OF THE HOLIDAY.

18             WE'VE GOT STUFF ON CALENDAR THURSDAY MORNING, DON'T

19   WE?

20             THE CLERK:  NO.

21             THE COURT:  WE DON'T HAVE JUDGMENT DEBTOR EXAMS?

22             THE CLERK:  I DON'T THINK SO.

23             I THINK THIS WAS THE ONLY THING THIS WEEK.

24             YOU WANT ME TO DOUBLE-CHECK?

25             THE COURT:  YES.

 1          MR. MENHART:  YOUR HONOR, JUST TO MAKE THINGS

 2    SLIGHTLY EASIER, WE ALSO HAVE A -- TO MAKE THINGS SLIGHTLY

 3    EASIER, WE HAVE A HEARING IN FRONT OF JUDGE WU ON THURSDAY.

 4    SO, TO THE EXTENT THAT WE COULD HAVE THAT SLIGHTLY AFTER

 5    JUDGE WU'S HEARING, THAT WOULD CERTAINLY BE SOMETHING WE

 6    COULD DISCUSS.

 7          THE COURT:  WELL, I WOULD URGE THE PARTIES TO

 8    CONTINUE TALKING.  I'M AROUND MID- TO LATE AFTERNOON

 9    TOMORROW.  I DON'T KNOW HOW LONG THE DEPOSITION IS GOING TO

10    TAKE.  IT WILL PROBABLY TAKE ALL DAY, RIGHT?

11          MR. PFEIFFER:  WELL, WE'RE PLANNING ON IT.  YOU

12    KNOW, I'M PRETTY QUICK WHEN IT COMES TO THAT, BUT, YOU KNOW,

13    YOU NEVER KNOW.

14          THE COURT:  ALL RIGHT.

15          THE CLERK:  THERE'S AT LEAST ONE JUDGMENT DEBTOR

16    EXAMINATION FOR TOMORROW.

17          THE COURT:  THURSDAY, YOU MEAN?

18          THE CLERK:  I MEAN, THURSDAY.  YES.

19          THE COURT:  OKAY.

20          WELL, I'M HERE THURSDAY MORNING IF YOU WANT TO COME

21    IN AFTER YOU TALK TO JUDGE WU.  BUT I WOULD URGE THE PARTIES

22    TO CONTINUE TALKING ABOUT THIS.  I MEAN, IT IS THE FRAMEWORK.

23          PRESUMABLY, AT SOME LEVEL OF DOLLARS IT BECOMES A

24    MORE FEASIBLE PROPOSAL THAN WHAT YOU'RE LOOKING AT.  SO, YOU

25    NEED TO CONTINUE FINE TUNING IT AND TALKING TO EACH OTHER AND

27

1    SEE IF YOU CAN MAYBE GET IT WITHIN THE RANGE THAT IT'S WORTH

2    COMING BACK TO SEE ME AGAIN.  AND IF IT IS, I'LL SEE YOU

3    THURSDAY MORNING.

4           MR. PFEIFFER:  YOUR HONOR, ONE MORE MATTER.

5           MR. NGUYEN IS IN TOWN UNTIL NOVEMBER 27TH AND

6    AVAILABLE FOR HIS DEPOSITION --

7           MR. LAUSON:  THE 20TH.

8           MR. PFEIFFER:  WAS IT THE 20TH?

9           MR. LAUSON:  CORRECT.

10          MR. PFEIFFER:  WE HAD PREVIOUSLY COMMUNICATED THOSE

11   DATES.  AND I JUST WANTED WHILE WE WERE HERE TO SEE IF WE

12   COULD GET A COMMITMENT ON GETTING IT DONE BEFORE THEN.  WE'RE

13   FLEXIBLE AS TO THE DAY.

14          THE COURT:  DO YOU WANT TO TAKE HIS DEPOSITION?

15          MR. MENHART:  YOUR HONOR, WE DO WANT TO TAKE HIS

16   DEPOSITION.  THE DISCOVERY DEADLINE IN THIS CASE WAS RECENTLY

17   EXTENDED ABOUT TWO MONTHS AT THEIR REQUEST.  AND WE DID NOT

18   OPPOSE IT.

19          THE CONCERN THAT WE HAVE AT THIS POINT IS THAT --

20   AND I DON'T WANT TO GET ADVERSARIAL HERE -- AARDWOLF LLC --

21   AND I'M TRYING TO BE AS POLITE AS I POSSIBLY CAN BE -- IS AN

22   ENTITY THAT EXISTS TO BRING THIS LITIGATION.  AND THAT'S IT.

23   HIS BUSINESS --

24          THE COURT:  SO WHAT.

25          MR. MENHART:  AND THE REASON IT MATTERS, YOUR

1    HONOR, IS THAT THE DOCUMENTS THAT WE RECEIVED IN THIS

2    PARTICULAR CASE SHOW ONE SALE.  THE INVOICE WAS REDACTED.

3    THERE'S A LOT OF INFORMATION THAT WE TRULY AND HONESTLY --

4            THE COURT:  DID YOU HEAR WHAT I SAID TO PLAINTIFF'S

5    COUNSEL THIS MORNING?

6            MR. MENHART:  I DID.

7            THE COURT:  ABOUT THE WAY YOU PRODUCED YOUR

8    DOCUMENTS?

9            MR. MENHART:  I DID.

10           THE COURT:  WHICH WAS NOT ACCEPTABLE.

11           MR. MENHART:  I DID.

12           THE COURT:  BUT I MADE HIM GO AHEAD WITH THE

13   DEPOSITION.

14           MR. MENHART:  I AGREE.  I AGREE WITH THAT.  AND WE

15   --

16           THE COURT:  SO, YOU'RE NOT ON VERY GOOD GROUND TO

17   START GETTING HOSTILE ABOUT DOCUMENTS.

18           MR. MENHART:  WELL, WITH ALL DUE RESPECT, YOUR

19   HONOR, NO QUESTION THEY PRODUCED ALL THEIR DOCUMENTS.  THEY

20   DIDN'T HAVE ANYTHING.  WE HAVE AN ACTUAL BUSINESS.

21           THE COURT:  YOU HAVE --

22           MR. MENHART:  THERE'S A VERY -- THERE'S A VERY

23   IMPORTANT DISTINCTION HERE BETWEEN A MADE-UP ENTITY FOR

24   LITIGATION PURPOSES --

25           THE COURT:  DO YOU HAVE EITHER --

1          MR. MENHART: -- AND AN ACTUAL BUSINESS.

2          THE COURT:  DO YOU HAVE SUBPOENAS AND PROPER

3     REQUESTS OUT TO THESE OTHER ENTITIES?

4          MR. MENHART:  WE DO HAVE SUBPOENAS.

5          THE COURT:  WHICH ARE NOT PARTIES TO THE CASE.

6          MR. MENHART:  THAT'S CORRECT.

7          THE COURT:  AS MUCH AS YOU WANT TO RAIL ABOUT THE

8     FACT THAT --

9          MR. MENHART:  BUT WE -- WE HAVE A MOTION PENDING.

10    AND THIS IS EXACTLY THE POINT I'M MAKING.  WE HAVE A MOTION

11    PENDING TO MAKE THEM PARTIES TO THE CASE.  AND THE REASON

12    THAT MOTION IS PENDING NOW AS OPPOSED TO BEFORE IS THAT THE

13    INFRINGEMENT HAS BEEN ONGOING EVEN DURING THE CASE.

14          AND ONE QUICK EXAMPLE.

15          THE COURT:  WELL, NOW ALL YOU'RE DOING IS -- WE'RE

16    GOING TO TALK SETTLEMENT.

17          MR. MENHART:  I UNDERSTAND.  AND I DON'T --

18          THE COURT:  AND SUDDENLY WE'RE IN DISCOVERY AND

19    YOU'RE TALKING ABOUT BLOWING THE CASE UP AND INCREASING IT

20    AND EXPANDING IT.  IF ONLY YOU SPENT AS MUCH TIME AND EFFORT

21    AND PASSION ABOUT LOOKING FOR A DEAL THAT WOULD SETTLE THE

22    CASE.

23          MR. MENHART:  YOUR HONOR, WITH ALL DUE RESPECT, I

24    THINK WE'VE BEEN VERY -- I THINK WE'VE BEEN WORKING IN GOOD

25    FAITH HERE.  TRULY WE HAVE.  YOU KNOW, WE SET OUT THE

```
 1   FRAMEWORK --
 2           THE COURT:  SENDING THEM DOCUMENTS IN A PILE
 3   WITHOUT IDENTIFYING THEM AS TO SPECIFIC INTERROGATORIES AND
 4   DOCUMENT REQUESTS IS IN COMPLETE VIOLATION OF THE RULES AND
 5   NOT IN GOOD FAITH.
 6           MR. MENHART:  YOUR HONOR, WITH ALL DUE RESPECT --
 7           THE COURT:  I'VE GIVEN YOU A BREAK BECAUSE I WANTED
 8   THE DEPOSITION DONE BEFORE YOU WENT BACK BEFORE -- YOU KNOW,
 9   GEORGE WU HAD THIS DEADLINE.  NOW YOU'RE TELLING ME THE
10   DEADLINE HAS BEEN MOVED.
11           MR. MENHART:  WELL, IT HAS BEEN.
12           THE COURT:  OKAY.
13           MR. MENHART:  YOU KNOW, AND I DON'T KNOW WHAT ELSE
14   TO SAY ABOUT THAT.  I MEAN -- LOOK, BEING PERFECTLY FRANK, WE
15   HAVE BEEN IN TOUCH WITH THEM AS TO THE DOCUMENTS AND OUR
16   DOCUMENTS, AND WE'VE PRODUCED THEM.  AND I CAN TELL YOU RIGHT
17   NOW WITH ALL DUE RESPECT TO BOTH THE COURT AND THE PLAINTIFFS
18   IN THIS CASE I PRODUCED DOCUMENTS LIKE THAT IN OTHER CASES,
19   AND I HAVE -- I LITERALLY HEARD NO PEEP.  BECAUSE PEOPLE WANT
20   TO --
21           THE COURT:  THAT DOESN'T MAKE IT RIGHT.
22           MR. MENHART:  IT MIGHT -- MAYBE NOT.
23           THE COURT:  IT BLATANTLY VIOLATES THE RULE.
24           MR. MENHART:  YOUR HONOR, YOUR --
25           THE COURT:  I CITED YOU THE RULE.
```

1        MR. MENHART:  I READ THE RULE.  BUT WHAT I'M

2   TELLING YOU IS THAT THE ENFORCEMENT OF THE RULE BETWEEN

3   PARTIES -- AND I'M JUST --

4        THE COURT:  I DON'T CARE.

5        MR. MENHART:  OKAY.  FAIR ENOUGH.  BUT WHAT I'M

6   TELLING YOU --

7        THE COURT:  IN MY COURT WE FOLLOW THE RULES.

8        MR. MENHART:  FINE.  BUT WHAT I'M TELLING YOU IS

9   THAT IN -- AND I'VE LITIGATED IN MANY COURTS ACROSS THE

10  COUNTRY, AND I'M NOT SAYING THERE'S ANYTHING WRONG WITH THIS

11  COURT BY ANY STRETCH OF THE IMAGINATION, BUT WHAT I AM SAYING

12  IS THAT I HAVE PRODUCED DOCUMENTS IN THAT FORM, AND I'VE NOT

13  HEARD A PEEP.

14        THE COURT:  I DON'T WANT TO HEAR ANY MORE.  I MADE

15  A RULING.

16        MR. MENHART:  OKAY.

17        THE COURT:  WHAT YOU DID VIOLATED THE RULES, AND

18  I'M NOT GOING TO SIT HERE AND LISTEN TO YOU EXPOUND ON ALL

19  THE REASONS WHY IT SHOULDN'T MATTER.  YOU BROKE THE RULES.

20        MR. MENHART:  OKAY, YOUR HONOR.  FAIR ENOUGH.

21        BUT THEN THE QUESTION I WOULD HAVE THEN --

22        THE COURT:  WHAT DO YOU MEAN FAIR ENOUGH?  YOU ARE

23  ON THE VERGE OF BEING INSUBORDINATE, COUNSEL.  I MADE A

24  RULING, AND I'M NOT GOING TO SIT HERE AND LISTEN TO YOU ARGUE

25  ABOUT THAT RULING.

32

1          MR. MENHART:  YOUR HONOR --

2          THE COURT:  ESPECIALLY AFTER I'VE ALREADY TOLD YOU

3     THREE TIMES YOU BROKE THE RULES.

4          MR. MENHART:  YOUR HONOR, I UNDERSTAND THAT

5     COMPLETELY.

6          THE COURT:  YOU SHOULD SAY I'M SORRY, JUDGE.

7          MR. MENHART:  YOUR HONOR, I'M --

8          THE COURT:  SAY IT.

9          MR. MENHART:  I'M SORRY.

10         THE COURT:  SIT DOWN.

11         ALL RIGHT.  I'M NOT GOING TO DEAL WITH DISCOVERY

12    ISSUES THAT ARE NOT BEFORE ME.

13         I'LL SEE YOU ON THURSDAY MORNING IF YOU MAKE ANY

14    PROGRESS AT ALL AND WANT TO TALK FURTHER.

15         MR. MENHART:  THANK YOU.

16         THE CLERK:  COURT IS ADJOURNED.

17         (PROCEEDINGS CONCLUDED 1:24 P.M.)

18

19

20

21

22

23

24

25

33

1

2

3

4                        C E R T I F I C A T E

5

6            I CERTIFY THAT THE FOREGOING IS A CORRECT

7    TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE

8    PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

9

10

11

12   /S/ DOROTHY BABYKIN                        11/26/15

13   _____          _____

14   FEDERALLY CERTIFIED TRANSCRIBER           DATED

15   DOROTHY BABYKIN

16

17

18

19

20

21

22

23

24

25